UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MASFORCE EUROPE, BVBA,

       Plaintiff,                                      Case No. 8:11-CV-1814-T-24AEP

v.

MASTRY MARINE & INDUSTRIAL
DESIGN, INC., d/b/a/ MASTRY ENGINE
CENTER; and H.P.B.C., INC., d/b/a
NOR-TECH HI PERFORMANCE BOATS

       Defendants.
_____/

## ORDER

This cause is before the Court upon Defendants Mastry Marine & Industrial Design, Inc. d/b/a/ Mastry Engine Center ("Mastry") and H.P.B.C., Inc., d/b/a/ Nor-Tech Hi Performance Boats' ("Nor-Tech") Motion to Exclude Testimony of Plaintiff's Expert Stephen Knox. (Dkt. 73). Plaintiff MasForce Europe, BVBA ("MasForce") has filed a response. (Dkt. 82). For the reasons explained herein, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART.**

    **I.**    **Background**

The facts relevant to this motion are straightforward. MasForce's alleges that in late 2009 it purchased an offshore powerboat ("Boat") from Mastry and that the Boat was manufactured by Nor-Tech. (Dkt. 1 ¶8). In July 2010, the Boat suffered significant damage during a racing competition off the coast of Sardina, Italy. (Dkt. 69 at 12; Dkt. 81 at 8). The circumstances and cause of the accident are heavily disputed by the Parties but are beyond the scope of the instant

motion. At the time of the incident, the Boat was being operated by Patrick Huybreghts and Shelly Jory-Leigh. (Dkt. 69 at 13). The Boat suffered extensive damage resulting in its submersion in the Mediterranean Sea. (Dkt. 69 at 13; Dkt. 81 at 9). MasForce now alleges several counts against Mastry and Nor-Tech arising from the accident and the resulting damage to the Boat including claims for breach of contract, breach of warranty, negligence, strict products liability, and a violation of Florida's Deceptive and Unfair Trade Practices Act. (Dkt. 1). MasForce retained marine surveyor and engineer Stephen Knox[1] to provide expert testimony in support of its claims.[2] (Dkt. 82 at 1-2).

## II. Motion to Exclude Expert Testimony

The Federal Rules of Evidence[3] provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A trial court, acting as a gatekeeper, must ensure that proffered expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The Eleventh Circuit instructs district courts to determine whether:

---

[1] As per the cover of his report, it appears Mr. Knox's first name is spelled Stephen. Defendants and MasForce spell his name incorrect in their motion and response respectively.

[2] In their motion to exclude, Defendants briefly state that Knox's opinions "are merely duplicative of West's." (Dkt. 73 at 3). As this argument was not further developed, the Court does not address it in this order. However, the Court cautions MasForce that it does not ordinarily permit such testimony. *See Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp*, 2 2010 WL 4225947, at *2 (S.D. Fla. Oct. 21, 2010).

[3] When the Court exercises diversity jurisdiction, it applies state substantiate law; however, the Federal Rules of Evidence still govern the admissibility of evidence including expert testimony. *See Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1193 (11th Cir. 2010).

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citation omitted). The proponent of the expert testimony has the burden of laying the proper foundation by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citations omitted). In making this evaluation, district courts "have substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999) (citation omitted). Importantly, in adjudicating the admissibility of expert testimony, it is not the function of the Court to determine the ultimate persuasiveness of the testimony. *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citations omitted). Thus, objections regarding the inadequacy of a study are generally more appropriately considered as an objection to the weight, and not the admissibility, of the evidence. *Id.*

**III.    Discussion**

Knox's report expresses six opinions. (Dkt. 82-3 at 3). However, five of these can be grouped together and paraphrased as Knox opining that the absence of a "laminated, bolted hull-deck joint" in the bow section of the Boat did not permit the Boat to operate safely in a racing environment and that this design omission caused the Boat's structural failure. *Id*. Knox's other conclusion is that the sales contract allegedly made between MasForce and Mastry called for a "Nor-Tech 427 Competition" powerboat. *Id.* Upon reviewing the sales contract, the Court notes that Knox's conclusion mirrors the precise language of the contract. (Dkt. 56-8). Accordingly, the

Court finds that this conclusion is not appropriate expert testimony, because an average layperson could read the contract and draw the same conclusion. *Frazier*, 387 F.3d at 1262 ("[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person.").

In addition to the conclusion made in his report, Knox stated at his deposition that he intended to testify at trial that any adjustments to the Boat's ballast did not contribute to its structural failure. (Knox Depo. at 32). Knox explains that this conclusion was omitted from his report, because he did not believe at the time that ballast was a "significant question or issue." (Knox Depo. at 73:15).

### A. Knox's Qualifications

Defendants assert that Knox is unqualified to give the opinions described above, because he has "no background or experience with offshore powerboats." (Dkt. 73 at 15). Defendants' paramount challenge to Knox's qualification is that while he may be qualified to render damage assessments of some types of vessels, he lacks the requisite education, experience, or training to do so with offshore racing powerboats. *Id*. at 15-17.

The Court finds that Knox is an expert marine surveyor. An expert may be qualified "by knowledge, skill, experience, training, or education[,]" and Knox reports that his opinions are "[b]ased on [his] engineering education and [his] experience." Fed. R. Evid. 702; (Knox Depo. at 91:12). Knox is the president and principal owner of Knox Marine Consultants, a business created 25 years ago whose primary service is conducting damage surveys. (Knox Depo. at 38-39; Dkt. 82-3 at 8). In this capacity, Knox reviews all of the damage surveys conducted by his employees. (Knox Depo. at 39:4). Knox has inspected failures of hull-to-deck joints, which is the

most crucial aspect of his conclusions. (Knox Depo. at 104-105). Knox is a member of various professional organizations related to marine surveying and has held a number of leadership positions in several of those organizations. *See United States v. Hensel*, 711 F.2d 1000, 1006 (11th Cir. 1983) (citing membership in professional organizations as a relevant factor in determining an expert's qualification); (Dkt. 82-3 at 8). Knox has a degree in engineering, is a registered professional engineer, takes continuing education courses related to the marine industry, and teaching courses on claims investigations. (Dkt. 82-3 at 8). He has authored numerous publications on topics related to marine surveying and boat damage assessments. *See Winn-Dixie Stores, Inc. v. Dolgencorp*, LLC, 862 F. Supp. 2d 1322, 1329 (S.D. Fla. 2012) (considering publication history as a factor in evaluating an expert's qualification). *Id*. at 8, 12. By virtue of his extensive experience and education, the Court finds that Knox is clearly qualified as an expert marine surveyor.

Defendants however challenge that the opinions Knox made in his report do not fit within the expertise identified by the Court. (Dkt. 73 at 15-17). Defendants point out that Knox is not an offshore racing expert and syllogize that because the Boat's structural failure occurred during offshore racing competition, Knox cannot testify as an expert in this litigation. *Id.* at 16-17; (Knox Depo. at 41:2). A witness's expertise generally allows the witness to offer an expert opinion reasonably within the confines of that expertise. *Compton v. Subaru of Am., Inc*., 82 F.3d 1513, 1520 (10th Cir. 1996); *see, e.g., McCloud ex rel. Hall v. Goodyear Dunlop Tires N. Am., Ltd.*, 479 F. Supp. 2d 882, 888 (C.D. Ill. 2007) (finding that an expert in tires generally could offer an expert opinion regarding motorcycle tires absent specific experience with such tires). Consequently, a lack of precise specialization generally affects the weight, and not the

Page 5

admissibility, of the proffered expert testimony. *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013). As one court explained, "[A]n expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *McGee v. Evenflo Co., Inc.*, 2003 WL 23350439, at *3 (M.D. Ga. Dec. 11, 2003) *aff'd*, 143 F. App'x 299 (11th Cir. 2005). The Court, having found that Knox is an expert marine surveyor, finds that his opinions are reasonably within that expertise. In other words, the fact that the vessel in this litigation is an offshore racing powerboat does not in itself remove it from the spectrum of Knox's expertise. While Defendants point out distinctions between Knox's expertise and the precise subject matter at hand, Defendants fail to extrapolate how such distinctions render Knox unqualified.[4] Thus, to the extent that any these distinctions are material, Defendants may identify them before the trier of fact. *Allmond v. Akal Sec., Inc.*, 2007 WL 988757, at *2 (M.D. Ga. Mar. 29, 2007) (explaining that "courts liberally construe a witness's qualifications in favor of expert status and consider gaps in a witness's qualifications a matter for the jury to consider in determining what weight to give to the testimony").

B. Knox's Methodology

Even if Knox is qualified, Defendants contend that he did employ a proper methodology in reaching his conclusions and that his conclusions are consequently unreliable. (Dkt. 17-21). Reliability is separate consideration than an expert's qualification; even the most qualified of experts with an exemplary track record may have failed to utilize a proper methodology in the specific case before a court. *See Frazier*, 387 F.3d at 1261 (explaining "experience, standing alone, is a[n in]sufficient foundation rendering reliable *any* conceivable opinion the expert may

---

[4] The burden to demonstrate the qualification of Knox of course rests with MasForce, but as explained below, the Court has determined that MasForce has satisfied its burden.

express") (emphasis original). To assess the reliability of an expert's methodology, a district court considers "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; [and] (4) whether the technique is generally accepted by the scientific community." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005) (citation omitted). These factors do not constitute an exhaustive list of relevant factors in adjudging reliability, and district courts "have substantial discretion in deciding how to test an expert's reliability." *Id.* (citation omitted). In evaluating Knox's methodology, it is helpful to divide his conclusions into two distinct categories: those related to the Boat's hull-to-deck connection and those related to the effect of adjustments to the Boat's ballast.

      1. Hull-to-Deck Connection

West concludes that the absence of adequate bonding between the Boat's hull and deck was a dangerous design or manufacturing defect that rendered the Boat unsuitable for racing purposes and caused its structural failure. (Dkt. 82-3 at 5). West further opines that "a laminated, bolted hull-deck joint" would have been an appropriate bonding design given the Boat's anticipated use of speeds up to 90 miles per hour. *Id*.

The parties do not disagree about what actions West undertook in reaching these opinions but rather whether they were sufficient to establish reliability by a preponderance of the evidence. (Dkt. 73 at 16-21; Dkt. 82 at 17-19). During his investigation, Knox reviewed the report of MasForce's other expert, Sam West. (Knox Depo. at 91). West's report contained photographs of the Boat during its normal operation and its condition following recovery from the Mediterranean Sea. (81-2 at 22-29). Additionally, Knox reviewed hundreds of other

photographs taken by West. (Knox Depo. at 4). Knox states that he also reviewed websites of other boat manufacturers that West had listed in his report. *Id*. at 36. Knox spoke with West for 30 minutes to hour regarding West's findings and specifically questioned West about some of the photographs. *Id*. at 20, 94. Knox watched an on-board video of the accident multiple times including in "super slow motion" and "frame-by-frame." *Id.* at 116-117. Lastly, Knox spoke with two employees of companies that manufacture similar boats regarding hull-to-deck joint design. *Id*. at 4, 38.

Knox did not personally inspect the Boat nor did he have access to it's design plans. (Dkt. 82-3 at 3). However, "An expert may rely on the reliable opinions of another expert in forming his own opinions." Mason v. Safeco Ins. Co. of Am., 2010 WL 3341582, at *8 (E.D. Mo. Aug. 23, 2010); *see also* Advisory Committee Notes to 2000 Amendments Fed. R. Evid. 702 ("The term 'data' is intended to encompass the reliable opinions of other experts.").Of course an expert doing so may not simply adopt the findings of the other expert without conducting an independent investigation. *Hendrix v. Evenflo Co., Inc*., 255 F.R.D. 568, 607 n. 75 (N.D. Fla. 2009).The Court has determined that West's conclusions related to the Boat's hull-to-deck bonding design are reliable, and accordingly finds that it was proper for Knox to rely on West's findings in making his own. Knox did not merely ratify West's findings, but properly utilized some of the data (e.g. pictures, online information) to assist in his own investigation. Furthermore, Knox contacted West to discuss the contents of West's report. (Knox Depo. at 20).

Based upon the investigatory steps described above, the Court finds that Knox's conclusions related to the hull-to-deck connection are sufficiently reliable. The Court believes that Knox's review of hundreds of photographs, the functional equivalent of physically

inspecting the Boat, in addition to repeatedly viewing the on-board footage of the accident is sufficient to permit Knox to opine whether the Boat's design caused its structural failure during the race. Knox could reasonably discern the Boat's design from the photographs and could form an understanding of the circumstances of the Boat's structural failure from the video. These actions, coupled with Knox's knowledge of a powerboat's anticipated use, allowed him to reliably form an opinion as to whether the design of the Boat's hull-to-deck connection was a design or manufacturing defect.

This is not to say that Knox took every conceivable step in reaching his conclusions, but this is not required to establish reliability. To the extent that Knox's investigation failed to conform to the standard that Defendants believe proper, such discrepancies may be elicited before the trier of fact as impacting the weight to be assigned to Knox's testimony. *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (explaining that "objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility") (citation omitted).

2. Impact of Adjustments to Ballast

The Court however finds that Knox did not rely on a reliable methodology in categorically determining that adjustments to the Boat's ballast did not contribute to its structural failure. Knox concluded that the "relocation and placement of ballast was not an issue in the accident." (Knox Depo. at 32:12). During his deposition, Knox explained that his conclusion eliminating any ballast adjustments as a contributing factor to the accident was a product of the same investigatory steps he took to reach his opinions regarding the hull-to-deck bonding. *Id.* at 97-98. However, there is an important difference between identifying a potential cause of an

occurrence and categorically excluding another potential cause.[5] As Knox concedes, there is "difficulty in trying to prove a negative." *Id.* at 96:16. Knox explains he did not find "evidence to suggest that the ballast played a factor" but admits that he conducted no mathematical calculations or engineering analysis in considering the effect of the ballast. *Id*. at 18:6-20, 96:24.

While Knox certainly does not have to establish that his conclusion was correct for it to be admissible, the Court finds that the lack of scientific testing coupled with the inherent difficulty in excluding a potential cause, renders Knox's ballast conclusion an impermissible leap of faith. *Rider v. Sandoz Pharmaceuticals Corp.,* 295 F.3d 1194, 1202 (11th Cir. 2002). MasForce has not satisfied its burden to establish the reliability of Knox's methodology in rendering this opinion by a preponderance of the evidence.

C. Utility of Knox's Testimony to Trier of Fact

Defendants' argument that Knox's testimony would be unhelpful to the trier of fact simply recasts their above-discussed contentions regarding West's qualification and reliability of the methodologies he employed. (Dkt. 72 at 19-23). In this section of their motion, Defendants lambast Knox's conclusions as "specious," "sheer guesswork," "mere conjecture," "completely speculative," "nothing more than a guess," "not science," "untested hypotheses," and the result of a "fatal lack of experience, knowledge, and qualifications." (Dkt. 73 at 21-25). All of these descriptions are merely repetitions, albeit differently worded, of Defendants' arguments under the qualification and reliability prongs of the admissibility test.

---

[5]This is because it is notoriously difficult to prove a negative. *See generally United States v. Newman*, 144 F.3d 531, 543 (7th Cir. 1998). However, this difficulty does not relieve MasForce of its burden to establish the reliability of Knox's conclusions. *Allison ,*184 F.3d at 1306; *see generally Moore v. Kulicke & Soffa Indus., Inc.,* 318 F.3d 561, 568 (3d Cir. 2003) (explaining that the party with the burden of proof is not absolved of meeting its burden even when confronted with the difficulty of proving a negative).

Whether an expert's opinions will assist the trier of fact "goes primarily to relevance." *Daubert*, 509 U.S. at 591. The question is not whether the proffered evidence ultimately persuades the trier of fact but whether it goes to a material aspect of the litigation. *See Rutledge v. NCL (Bahamas), Ltd.*, 464 F. App'x 825, 829 (11th Cir. 2012). This inquiry also incorporates the requirement that testimony help an average layperson in understanding the issues material to the litigation. *Frazier*, 387 F.3d at 1262. The Court finds that West's testimony regarding the hull-to-deck connection is highly relevant to the critical issues of what caused the Boat's structural failure and whether the design allegedly in place on the boat rendered it defective. Additionally, an average layperson is likely unfamiliar with the interworkings of a vessel's structural components. Accordingly, the Court concludes that Knox's testimony which is otherwise admissible will assist the trier of fact.

## IV. Conclusion

For the reasons explained above, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**:

1. Knox's opinions regarding the contractual terms and effect of the Boat's ballast are inadmissible as expert testimony.

2. Knox's other opinions are admissible as expert testimony.

**DONE AND ORDERED** at Tampa, Florida, this 27th day of August, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record