UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MASFORCE EUROPE, BVBA,

    Plaintiff,                                             Case No. 8:11-CV-1814-T-24AEP

v.

MASTRY MARINE & INDUSTRIAL
DESIGN, INC., d/b/a/ MASTRY ENGINE
CENTER; and H.P.B.C., INC., d/b/a
NOR-TECH HI PERFORMANCE BOATS

    Defendants.
_____/

**ORDER**

This cause is before the Court upon Defendants Mastry Marine & Industrial Design, Inc. d/b/a/ Mastry Engine Center ("Mastry") and H.P.B.C., Inc., d/b/a/ Nor-Tech Hi Performance Boats' ("Nor-Tech") Motion to Exclude Testimony of Plaintiff's Expert Sam West. (Dkt. 72). Plaintiff MasForce Europe, BVBA ("MasForce") has filed a response. (Dkt. 81). For the reasons explained herein, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART.**

**I.    Background**

The facts relevant to this motion are straightforward. MasForce's alleges that in late 2009 it purchased an offshore powerboat ("Boat") from Mastry and that the Boat was manufactured by Nor-Tech. (Dkt. 1 ¶8). In July 2010, the Boat suffered significant damage during a racing competition off the coast of Sardina, Italy. (Dkt. 69 at 12; Dkt. 81 at 8). The circumstances and cause of the accident are heavily disputed by the Parties but are beyond the scope of the instant motion. At the time of the incident, the Boat was being operated by Patrick Huybreghts and

Shelly Jory-Leigh. (Dkt. 69 at 13). The Boat suffered extensive damage resulting in its submersion in the Mediterranean Sea. (Dkt. 69 at 13; Dkt. 81 at 9). MasForce now alleges several counts against Mastry and Nor-Tech arising from the accident and the resulting damage to the Boat including claims for breach of contract, breach of warranty, negligence, strict products liability, and a violation of Florida's Deceptive and Unfair Trade Practices Act. (Dkt. 1). MasForce retained Sam West to provide expert testimony in support of its claims. (Dkt. 81 at 2).

## II. Motion to Exclude Expert Testimony

The Federal Rules of Evidence[1] provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A trial court, acting as a gatekeeper, must ensure that proffered expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The Eleventh Circuit instructs district courts to determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific,

---

[1] When the Court exercises diversity jurisdiction, it applies state substantiate law; however, the Federal Rules of Evidence still govern the admissibility of evidence including expert testimony. *See Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1193 (11th Cir. 2010).

> technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citation omitted). The proponent of the expert testimony has the burden of laying the proper foundation by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citations omitted). In evaluating the admissibility of expert testimony, district courts "have substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999) (citation omitted). Importantly, in adjudicating the admissibility of expert testimony, it is not the function of the Court to determine the ultimate persuasiveness of the testimony. *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citations omitted). Thus, objections regarding the inadequacy of a study are generally more appropriately considered as an objection to the weight, and not the admissibility, of the evidence. *Id*.

### III. Discussion

West's report expresses six opinions, the crux of which is that the absence of laminate and resin connecting the Boat's deck to its hull structure was the cause of its "catastrophic structural failure." (Dkt. 81-2 at 18; West Depo. at 188:19). West opines that comparable vessels are so equipped and that the Boat's use of an alternative design was "wholly inadequate" for the purposes for which MasForce used the Boat. *Id*. Lastly, West concludes neither adjustments by MasForce to the Boat's ballast nor abnormal operation of the Boat preceding the incident caused the Boat's structural failure. *Id*. Defendants contend West fails all three prongs of the Eleventh Circuit test in asserting that he is unqualified to render such opinions, his opinions are not based on a reliable methodology, and his testimony would be unhelpful to the trier of fact. *See Fraizer*,

387 F.3d at 1260. While there is overlap between these three inquiries, they are "distinct concepts that courts and litigants must take care not to conflate." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Accordingly, the Court will consider each in turn.

      A. West's Qualifications

Defendants contend that West is unqualified to render the opinions described above. (Dkt. 72 at 15-17). Defendants' predominant argument against West's qualification is his unfamiliarity with offshore powerboats and even more specifically, with offshore powerboat racing. At his deposition, West was asked whether he considered himself an "offshore racing expert," and he responded in the negative. (West Depo. at 33:5). As West himself explains, his purported expertise arises from "practical experience through surveying damaged laminate structures" and his twenty year professional relationship with the marine industry. (West Depo. at 263:10; Dkt. 81-2 at 20).

The Court agrees with MasForce that Defendants' argument draws too exacting a standard from Rule 702. By its language, Rule 702 permits an expert to be qualified by "by knowledge, *skill, experience, training*, or education." Fed. R. Evid. 702 (emphasis added). A witness's expertise generally allows the witness to offer an expert opinion reasonably within the confines of that expertise. *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996); *see, e.g., McCloud ex rel. Hall v. Goodyear Dunlop Tires N. Am., Ltd.*, 479 F. Supp. 2d 882, 888 (C.D. Ill. 2007) (finding that an expert in tires generally could offer an expert opinion regarding motorcycle tires absent specific experience with such tires). Consequently, a lack of precise specialization generally affects the weight, and not the admissibility, of the proffered expert

testimony. *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013). While Defendants point out distinctions between West's expertise and the precise subject matter at hand, Defendants fail to extrapolate how such distinctions render West unqualified.[2] As one court explained, "Simply stated, an expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *McGee v. Evenflo Co., Inc.*, 2003 WL 23350439, at *3 (M.D. Ga. Dec. 11, 2003) *aff'd*, 143 F. App'x 299 (11th Cir. 2005).

     While West may not specialize in the exceedingly narrow area of offshore powerboat design and racing, the Court is persuaded that this topic is reasonably within the confines of his existing expertise. The Court concludes that by virtue of his lengthy experience as a marine surveyor conducting damage surveys on vessels of various types and other related activities, he is qualified to state the opinions in his report. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156, 119 S. Ct. 1167, 1178, 143 L. Ed. 2d 238 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). This experience includes serving as a "full time marine surveyor and consultant, specializing in yacht and small commercial craft sector," and working as a marine surveyor and consultant for 16 years. (Dkt. 81-2 at 3). Prior to his work as a marine surveyor, West worked in boatbuilding, boat repairs, commissioning new vessels, and managing boats for clients. *Id* at 3, 21. He is accredited as surveyor, maintains professional development within the marine industry, and has carried out survey inspections of multiple damaged vessels. *Id.* West stated at his deposition that his work as a marine surveyor includes "looking at damaged vessels of various

---

[2]The burden to demonstrate the qualification of West of course rests with MasForce, but as explained below, the Court has determined that MasForce has satisfied its burden.

constructions . . . on behalf of insurance companies and private clients." (West Depo. at 33:10). Lastly, West had specific experience in examining failed laminate structures. *Id*. at 212:20.

To the extent that the West's expertise differs from the subject matter at hand, Defendants are free to point out any such distinction through cross examination and introducing contrary evidence. *See Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Accordingly, the Court finds that West is qualified to render the opinions outlined in his report.

B. West's Methodology

Even if West is qualified to offer expert testimony, Defendants further contend that he employed an unreliable methodology in reaching his conclusions. (Dkt. 72 at 17-19). To assess the reliability of an expert's methodology, a district court considers "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; [and] (4) whether the technique is generally accepted by the scientific community." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005) (citation omitted). These factors do not constitute an exhaustive list of relevant factors in adjudging reliability, and district courts "have substantial discretion in deciding how to test an expert's reliability." *Id*. (citing *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999)). West's conclusions can be categorized into three areas to consider the reliability of their methodology: conclusions related to the hull-to-deck bonding (numbers 11.1-11.4 in West's report), conclusions related to the impact of adjustments to the

Boat's ballast (number 11.5 in West's Report), and conclusions related to whether the Boat's operation contributed to its structural failure (number 11.6 in West's report). (Dkt. 81-2 at 18).

      1. Hull-to-Deck Connection

West rendered four opinions regarding the alleged absence of laminate connecting the hull and deck of the Boat and the inadequacy of the alternative structural design allegedly in place on the Boat. *Id.* West opines that the bonding on the Boat, which was allegedly accomplished by steel self-tapping screws, was inadequate for the Boat's racing purposes. *Id.*; (West Depo. at 213-15, 273-74). West further concludes that comparable vessels have laminate hull-to-deck bonding and that these vessels did not suffer a similar fate after use comparable to that of the Boat. (Dkt. 81-2 at 18).

While Defendants contend that West's conclusions were not the product of "an actual investigation," this charge is belied by the many investigatory steps undertaken by West. West states that his report is principally based upon his two-day inspection of the Boat and viewing video footage showing the cockpit of the Boat at the time of the accident. (West Depo. at 264:15). West conducted online research regarding the manufacture of vessels similar to the Boat and had the opportunity to inspect two similar vessels. *Id.* at 265-266; Dkt. 81-2 at 18. West's report states that he had access to photographs of the Boat during its construction and sea trials. (Dkt. 81-2 at 7). Additionally, West's report laboriously details conversations with Huybreghts regarding the construction and operational history of the Boat. (West Depo. at 32; Dkt. 81-2 at 4-6). West conducted "hammer sounding," which he explains is used to identify areas of weakness in a vessel's lamination. (West Depo. at 20:16). The Court finds West's two-day inspection of the Boat, detailed conversations with the eyewitnesses, review of before and

after photographs, and inspections of similar vessels to be particularly indicative that he employed a sound methodology in reaching both his conclusion of what caused the boat's structural failure and a comparison to comparable vessels.

    2. Impact of Adjustments to Ballast

However, the Court finds that West's conclusion that MasForce's adjustments to the ballast[3] did not contribute to its structural deficiencies is not the result of a reliable methodology. (Dkt. 81-2 at 18). In his report, West determined that "[p]rior ballast adjustments and engine compartment repairs as detailed in my report are not considered to be contributory to this failure." *Id*. When questioned at his deposition regarding how he reached this conclusion, West responded that it was based exclusively upon the ballast's location. (West Depo. at 89, 289-291). When specifically questioned whether he had performed any other testing or analysis to reach his conclusion, West responded that he did not. (West Depo. at 289-290). While the location of the ballast may be a factor in evaluating the cause of the Boat's structural failure, West fails to explain how the ballast's allegedly unchanged location in itself allowed him to draw a conclusion regarding its contribution to the incident. In determining its admissibility, the Court is not concerned with whether West's conclusion is correct; however, MasForce fails to establish by a preponderance of the evidence that this conclusion could reliably be reached by considering only one factor. *Allison*, 184 F.3d. at 1306. The Court cannot simply take an expert's word for it in establishing that he or she relied upon an appropriate methodology. *Frazier*, 387 F.3d at 1261. For these reasons, the Court concludes that West did not utilize a reliable

---

[3]Ballast is material placed on a vessels whose weight is used for stability purposes. *See generally Sumner v. Caswell*, 20 F. 249, 252 (S.D.N.Y. 1884). MasForce contends that ballast is commonly moved to balance a boat's handling according to differing sea conditions. (Dkt. 79 at 3).

methodology in reaching his conclusion whether adjustments to the Boat's ballast impacted his structural failure.        3. MasForce's Contribution to the Boat's Structural Failure

West's final conclusion is that "no abnormal operation of the vessel" that may have led to its failure. (Dkt. 81-2 at 18). West reports that this conclusion is based on viewing the onboard video of the incident and viewing recordings of other powerboats..*Id*; (West Depo. at 45-48, 293-94). Upon viewing the video, the Court notes that it is a stationary camera that only shows Huybreghts and Jory-Leigh piloting the Boat. (Dkt. 80-4). In other words, the camera is only trained in one direction and consequently does not show the conditions to which Huybreghts and Jory-Leigh were reacting. *Id*. Whether a vessel's operation is normal is contingent upon whether those piloting it are appropriately reacting to conditions (e.g. physical impediments, change in tides, ripples caused by other boats, etc.) which it encounters. The camera here is akin to concluding that an automobile is being normally driven with a dashboard-mounted camera only showing the driver steering the car.

Additionally, viewing the video did not even allow West to observe every facet of what was occurring on the boat; for example, West admits that he cannot discern how far back the Boat's throttles were pulled or the position of the trim tabs.[4] (West Depo. at 292:13, 293:6). West posits that the Boat was not being abnormally operated, but the video on which he bases the conclusion does not show at least two critical components of its operation. The problems with West's methodology are exacerbated by his admission that before submitting his report, he had only seen the onboard video once in "fast motion." (West Depo. at 286-287).

---

[4]The throttles control the speed of boat. (Jory-Leigh Depo. at 28:1-3). Adjustments to trim tabs affect the angle at which the Boat proceeds across water. (Jory-Leigh Depo. at 31:21).

In failing to explain how viewing the video allowed a categorical conclusion that the Boat's operation did not contribute to its structural failure, MasForce has not satisfied its burden. It is not that West could not have drawn this conclusion by way of a proper methodology but rather that this opinion is essentially premised on taking West's word for it. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005). Concluding that the operation of the Boat did not contribute whatsoever to its structural failure is "simply too great an analytical gap between the data and the opinion." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997). Accordingly, while the Court finds that West utilized a proper methodology to determine a potential cause of the Boat's structural failure (the design of the hull-to-deck connection), MasForce has not adduced sufficient evidence of West's methodology in excluding another possible contributing factor. Therefore, West's conclusion that the operation of the Boat did not contribute to the incident is not admissible as expert testimony.

C) Utility of West's Testimony to Trier of Fact

Defendants' argument that West's testimony would be unhelpful to the trier of fact simply recasts their above-discussed contentions regarding West's qualification and reliability of the methodologies he employed. (Dkt. 72 at 19-23). Whether an expert's opinions will assist the trier of fact "goes primarily to relevance." *Daubert*, 509 U.S. at 591. The question is not whether the proffered evidence ultimately persuades the trier of fact but whether it goes to a material aspect of the litigation. *See Rutledge v. NCL (Bahamas), Ltd.*, 464 F. App'x 825, 829 (11th Cir. 2012). The Court finds that West's testimony regarding the hull-to-deck connection is highly relevant to the critical issues of what caused the Boat's structural failure and whether the design allegedly

in place on the boat rendered it defective. Accordingly, the Court concludes that West's testimony which is otherwise admissible will assist the trier of fact.

**IV.     Conclusion**

For the reasons explained above, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**:

1. West's opinions numbered 11.1-11.4 in his report are *admissible* as expert testimony.

2. West's opinions numbered 11.5 and 11.6 in his report are *inadmissible* as expert testimony.

**DONE AND ORDERED** at Tampa, Florida, this 27th day of August, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record